**Joie D. NELSON, Plaintiff and Appellant,**

v.

**Rod BETIT, in his Capacity as Executive Director of the Utah Department of Human Services, Defendant and Appellee.**

No. 960489–CA.

Court of Appeals of Utah.

May 8, 1997.

---

4. Because of our disposition of this issue, we need not address Morrison's remaining claims of error.

Michael E. Bulson, Ogden, for Plaintiff and Appellant.

Jan Graham and Linda Luinstra, Salt Lake City, for Defendant and Appellee.

Before WILKINS, BENCH and GREENWOOD, JJ..

WILKINS, Associate Presiding Judge:

Appellant Joie D. Nelson seeks reversal of the trial court's order of summary judgment by which she was included in her son's "family" for purposes of determining her son's eligibility for Aid to Families with Dependent Children (AFDC) benefits pursuant to 42 U.S.C.A. § 602(a)(24) (West 1991). We affirm.

## BACKGROUND

In July 1992, appellant and her minor son were living together. Because of physical and financial circumstances, both appellant and her son were eligible for and receiving support under the AFDC program for a family of two. On July 28, 1992, appellant applied to the Social Security Administration (SSA) for benefits under two different programs: the Social Security Disability Insurance (SSDI) program, and the Supplemental Security Income (SSI) program. In October 1992, the SSA notified appellant that she was eligible for the SSDI program. Later that month, appellant received a lump-sum payment of $4918, representing SSDI benefits calculated from August 1992. As required, appellant notified the Department of Human Services (DHS), which administers the AFDC program, that she had received the SSDI lump-sum payment.

When DHS received notice of appellant's receipt of SSDI benefits, DHS re-evaluated the family's eligibility for AFDC benefits. DHS applied the lump-sum rule, codified at 42 U.S.C.A. § 602(a)(17) (West 1991), which requires a family receiving AFDC benefits to use a lump-sum payment until exhausted in place of the family's monthly AFDC benefits. As a result, in October 1992, DHS concluded that appellant and her son had become ineligible for AFDC and Medicaid benefits for

twelve months beginning November 1992 through October 1993.

In November 1992, the SSA notified appellant that she also qualified for benefits under the SSI program. Later in December 1992, she received an SSI lump-sum payment, representing benefits relating back to July 1992, the SSI application date. Appellant immediately notified DHS and requested it reconsider its decision to deny her son AFDC and Medicaid benefits. Appellant asserted that because she had been deemed eligible for and received SSI benefits relating back to July 1992, she was an SSI recipient when she received the SSDI lump sum in October. Therefore, she argued that under the exception in 42 U.S.C.A. § 602(a)(24), which excludes an SSI recipient's income from consideration in determining the family's AFDC eligibility, her SSDI lump-sum payment should not have been included as part of the family's available income, and her son should not have been found ineligible for AFDC and Medicaid benefits. DHS, however, upheld its decision to terminate benefits to appellant's son based on its policy regarding the application of section 602(a)(24). Under DHS's policy, which is based on the Secretary of the United States Department of Health and Human Services's (the Secretary) interpretation of section 602(a)(24) in a 1993 AFDC Action Transmittal, appellant did not become an SSI recipient until December 1992, when she actually received the SSI benefit check.

Both DHS and appellant agree that had she received the SSI check before the SSDI benefit check, her income and resources would have been excluded under section 602(a)(24) from the family's available income for AFDC eligibility purposes. As a result, appellant argues that DHS and the Secretary's interpretation of section 602(a)(24) is both unjust and leads to unreasonable results. Appellant asserts that the SSA's administrative processing delays caused the SSDI lump-sum payment to be calculated as part of the family's available income and resources, leaving her son ineligible for benefits.

Appellant challenged DHS's decision both administratively and by suit in the district court. On cross-motions for summary judgment, the district court, giving substantial deference to the Secretary's interpretation of section 602(a)(24), determined that appellant was not an SSI recipient in October 1992 when she received the SSDI lump-sum payment because she had neither been notified of her SSI eligibility nor received any SSI benefits. Therefore, the SSDI lump sum was appropriately included in the family income for purposes of determining AFDC eligibility. Appellant now challenges the district court's order affirming DHS's decision to terminate AFDC and Medicaid benefits to her son.

## STANDARD OF REVIEW

■ Summary judgment is appropriate when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). Because the parties agree the facts are undisputed, we examine only issues of law. We review the district court's conclusions of law for correctness, giving them no deference. *See Harline v. Barker,* 912 P.2d 433, 438 (Utah 1996). In addition, "we may affirm a grant of summary judgment on any ground available to the trial court, even if it is not one relied on below." *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993).

## ANALYSIS

### AFDC/SSI/SSDI Benefits and the Lump-sum Rule

The AFDC program provides financial assistance to needy dependent children and their parents or relatives who live with and care for them. *See* 42 U.S.C.A. § 601 (West 1991); *Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). The program's principal purpose is to help such parents and relatives "attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." 42 U.S.C.A. § 601. In addition, children and their caretakers found eligible for AFDC benefits are automatically eligible for health care benefits under Medicaid. *See* 42 U.S.C.A. § 1396a(a)(10)(A) (West 1992).

The AFDC program " 'is based on a scheme of cooperative federalism,' " as it is jointly funded by federal and state governments on a matching fund basis. *Shea,* 416 U.S. at 253, 94 S.Ct. at 1750 (quoting *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968)). States participate in the program voluntarily, but in electing to do so are obligated to administer the program in accordance with federal statutes and regulations. *See* 42 U.S.C.A. § 602 (West 1991); *Shea,* 416 U.S. at 253, 94 S.Ct. at 1750. However, within these confines, states are given broad discretion in disbursing program resources, i.e., determining the standard of need and the level of benefits. *See Lukhard v. Reed,* 481 U.S. 368, 371, 107 S.Ct. 1807, 1810, 95 L.Ed.2d 328 (1987); *cf. 15,844 Welfare Recipients v. King,* 474 F.Supp. 1374, 1382 (D.Mass.1979) (recognizing states' strong interest in allocating limited welfare resources).

In addition, pursuant to the Social Security Act, the federal government provides benefits to disabled persons under two programs administered by the SSA. The SSI program, codified at 42 U.S.C.A. § 1381–83 (West 1991–1992), is a federally funded and federally administered program designed to assist low-income individuals who are aged, blind, and disabled. *See id.* § 1381(a) (West 1991); *Sullivan v. Zebley,* 493 .U.S. 521, 524, 110 S.Ct. 885, 888, 107 L.Ed.2d 967 (1990); *Pennsylvania v. United States,* 752 F.Supp. 795, 797 (3d Cir.1984). After an individual applies for SSI benefits, the SSA, which administers the SSI program, generally takes a period of time to both determine the applicant's eligibility and then to begin making payments. *See Moore v. Colautti,* 483 F.Supp. 357, 362 (E.D.Pa.1979), *aff'd,* 633 F.2d 210 (3d Cir. 1980). This period of time between the application date and the date the individual receives the first SSI payment is typically referred to as the "determination period." It

is not unusual for the determination period to last six months or more. *See id.* However, once the individual is deemed to have met SSI requirements, the SSA considers the individual eligible for benefits as of the application date, *see* 42 U.S.C.A. § 1382(c)(6) (West 1992),[1] and the individual receives a retroactive lump-sum payment for all benefits accrued during the determination period.

The SSDI program, codified at 42 U.S.C.A. § 401–33 (West 1991), is also federally funded and federally administered and provides disability benefits similar to the SSI program. Although both the SSI and SSDI programs share a common definition of disability, *see* 42 U.S.C.A. §§ 423(d)(1)(A) (West 1991), 1382c(a)(3)(A) (West 1992); 20 C.F.R. §§ 404.1505, 404.1520, 416.905, 416.920 (1996), SSDI benefits are provided through an insurance program and are only available to disabled persons who have the requisite work history and have contributed to the Social Security program. *See* 42 U.S.C.A. §§ 423(a)(1)(A), 423(a)(1)(D), 423(c)(1) (West 1991); *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987). SSI benefits, however, are available to any blind, disabled, or elderly individual, regardless of work history. Because the two programs are administered separately by the SSA, a recipient could be notified of and begin receiving payments under one program before he or she is notified of his or her eligibility for the other.

Because the AFDC program is based on financial need, all the family's available income[2] and resources must be considered in determining whether the family is eligible for the program. Eligibility for the AFDC program is limited by the lump-sum rule, codified at 42 U.S.C.A. § 602(a)(17) (West 1991). This rule requires a family that receives a nonrecurring lump-sum payment[3] to apply

---

1. This section has been recodified at 42 U.S.C.A. § 1382(c)(7) (West Supp.1997).

2. The Secretary of Health and Human Services has determined that income is "available" when "*actually* available" and when "the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." 45 C.F.R. § 233.20(a)(3)(ii)(D) (1996) (emphasis added);

*see also Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981).

3. The federal regulation defining "lump-sum income" provides:

When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring earned or unearned

the lump sum prospectively for the number of months that the lump sum will satisfy the family's monthly standard of need. *See id.; see also Lukhard,* 481 U.S. at 372, 107 S.Ct. at 1810 (citing section 2304 of the Omnibus Budget Reconciliation Act of 1981, 95 Stat. 845 (codified as amended at 42 U.S.C. § 602(a)(17) (1982 ed., Supp. III))). As a result, the family becomes ineligible for AFDC and Medicaid benefits until the lump sum is exhausted. *See* 45 C.F.R. § 233.20(a)(3)(ii)(F) (1996). By enacting such a rule, Congress intended to " 'encourag[e] recipients to budget lump sums so that they serve to replace the family's monthly AFDC check.' " *Gardebring v. Jenkins,* 485 U.S. 415, 422 n. 9, 108 S.Ct. 1306, 1310 n. 9, 99 L.Ed.2d 515 (1988) (citation omitted).[4] Congress also intended the lump-sum rule to reduce the governmental cost of the AFDC program. *See Barnes v. Cohen,* 749 F.2d 1009, 1014 (3d Cir.1984).

At issue here is the proper application of section 42 U.S.C.A. § 602(a)(24). Section 602(a)(24) is an exception to the general rule requiring consideration of a family's total income and resources in determining AFDC eligibility. The statute requires states to disregard the income and resources of SSI recipients for purposes of determining a family's AFDC eligibility. Section 602(a)(24) provides, in pertinent part,

A State plan for aid and services to needy families with children must—

. . .

(24) provide that if an individual *is receiving* benefits under [the SSI program] . . .

then, *for the period for which such benefits are received* . . ., such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter and his [or her] income and resources shall not be counted as income and resources of a family under this subchapter. . . .

42 U.S.C.A. § 602(a)(24) (West 1991) (emphasis added).

The statute effectively prevents an individual from receiving both AFDC and SSI benefits, while ensuring that other family members remain eligible for AFDC benefits.[5] *See Zambardino v. Schweiker,* 668 F.2d 194, 200 (3d Cir.1981); *see also Pennsylvania v. United States,* 752 F.2d at 799; *Fitzgerald v. Schweiker,* 538 F.Supp. 992, 1001 & n. 10 (D.Md.1982) (stating statute designed to prevent "double-dipping"); *Moore,* 483 F.Supp. at 362 (noting "double-dipping" unfair to recipients living on only one check and causes unnecessary drain on limited pool of available public assistance money). Under section 602(a)(24), when a member of an AFDC family begins receiving SSI benefits, that individual's income and resources are no longer considered part of the "family" income in determining the amount of AFDC benefits the family receives. Thus, if an SSI application were approved on the day it was filed, the family would immediately lose the incremental amount of AFDC benefits attributed to that individual, and the SSI applicant would begin to receive full SSI benefits.

lump sum income (including for AFDC, title II and other retroactive monthly benefits, and payments in the nature of a windfall, e.g., inheritances or lottery winnings, personal injury and worker compensation awards, to the extent it is not earmarked and used for the purpose for which it is paid, i.e., monies for back medical bills resulting from accidents or injury, funeral and burial costs, replacement or repair of resources, etc.), the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. . . .
45 C.F.R. § 233.20(a)(3)(ii)(F) (1996).

**4.** With respect to the prior system, Congress noted that it had " 'the perverse effect of encouraging the family to spend [lump-sum] income as

quickly as possible in order to retain AFDC eligibility.' " *Barnes v. Cohen,* 749 F.2d 1009, 1014 (3d Cir.1984) (quoting S.Rep. No. 139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.C.C.A.N. 396, 771 (Report of the Committee on the Budget)).

**5.** The House Report accompanying the amendment to the AFDC program states that section 602(a)(24) will continue " 'the usual rule against payment of benefits under more than one public assistance plan by excluding from benefits under the family programs any individual who elects to receive aid under Title XX, Assistance for the Aged, Blind and Disabled.' " *Zambardino v. Schweiker,* 668 F.2d 194, 200 (3d Cir.1981) (quoting H. Rep. 231, 92d Cong., 2d Sess. 185, *reprinted in* 1972 U.S.C.C.A.N. 4989, 5171).

In a 1993 AFDC Action Transmittal, the Secretary stated that section 602(a)(24) "is applicable beginning on the date SSI payments are actually received," and not on the date SSI eligibility begins. *See* Treatment of Retroactive SSI and Child Support Collected During the SSI Retroactive Period, AFDC Action Transmittal, No. ACF–AT–93–20, at 2 (Nov. 2, 1993). DHS effectively adopted as its policy the Secretary's interpretation regarding the application of section 602(a)(24) and applied it to appellant's case.

Appellant disagrees with the Secretary and DHS's interpretation of section 602(a)(24) and instead claims that she was an SSI recipient as of the date she became eligible for SSI benefits in July 1992. Therefore, she asserts that she was an SSI recipient in October 1992 when DHS re-assessed her son's eligibility for AFDC benefits, and thus, under section 602(a)(24), her income and resources should have been excluded for purposes of determining her son's AFDC eligibility. Appellant challenges the district court's decision by arguing: (1) under the plain language of section 602(a)(24), the exclusion for SSI recipients applies during the SSI determination period; (2) the Secretary's interpretation of section 602(a)(24) found in the AFDC Action Transmittal is interpretative and thus owed no deference; and (3) the Secretary's interpretation is unreasonable and contrary to the purposes of the AFDC program.

The primary issue before us is determining when an individual becomes an SSI recipient, and, thus, when section 602(a)(24) applies in determining AFDC eligibility. In making this determination, we will examine: (1) the plain language of section 602(a)(24); (2) the appropriate degree of deference this court should accord the Secretary's interpretation as given in an action transmittal; and (3) whether the Secretary's interpretation is reasonable in light of the overall purpose and design of the AFDC program.

The Plain Language of Section 602(a)(24)

In interpreting section 602(a)(24), we first look to the plain language of the statute. If Congress's intent is clear from the statute's plain language, then we must give effect to that intent and our inquiry ends. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If, however, the statute is silent or ambiguous, then we examine whether the agency's interpretation of the statute is reasonable, given the statutory scheme and underlying purpose of the statute. *See id.* at 843, 104 S.Ct. at 2782; *Marturello v. Angus,* 957 F.2d 732, 733 (10th Cir.1992); *Vanscoter v. Sullivan,* 920 F.2d 1441, 1449 (9th Cir. 1990).

The plain language of section 602(a)(24) excludes the income and resources of an SSI "recipient" in determining the family's total income and resources for AFDC eligibility. Section 602(a)(24) provides that when an individual "*is receiving* benefits under [the SSI program] ... then, *for the period for which such benefits are received* ..., such individual shall not be regarded as a member of a family for purposes of determining" AFDC eligibility. 42 U.S.C.A. § 602(a)(24) (emphasis added). Although the statute clearly applies prospectively to SSI benefits once they are received, the statutory language is not clear as to whether the statutory exclusion applies to retroactive SSI benefits (i.e., those covering the determination period between the date of application and the date of receipt of the benefit check).

Both appellant and DHS, relying on different statutory language, different rules of statutory construction, and different case law, claim the language of the statute clearly supports their interpretation. Appellant argues that under the plain language of the statute she was an SSI recipient as of the date of SSI eligibility because the statute excludes an individual from the AFDC household "*for the period for which [SSI] benefits are received.*" *Id.* (emphasis added). Appellant asserts she received SSI benefits for the period July 1992 through December 1992, although she did not receive official notice of her eligibility until November 1992 and did not actually receive payment until December 1992. The retroactive SSI lump-sum payment reflected benefits "received" for the determination period. Therefore, she argues she should have been excluded from

her son's AFDC household because she became an SSI "recipient" as of July 1992, the date SSA found her eligible for SSI benefits.

In support of her interpretation, appellant cites *Gleim v. Pennsylvania Department of Public Welfare,* 48 Pa.Cmwlth. 356, 409 A.2d 951 (1980), which addressed facts nearly identical to those in this case. In *Gleim,* a husband applied for SSI benefits in April and his wife applied for AFDC benefits in May. *See id.* 409 A.2d at 952. Due to processing delays, the husband did not receive notification of his SSI eligibility or the first benefit check until August. *See id.* In the interim, the husband received a lump-sum check, and because the husband's resources were included in the family unit, the wife became ineligible for AFDC benefits. *See id.*

The *Gleim* court rejected the claim that the husband was not an SSI recipient until he was notified and had actually received the payments in part because such an interpretation would lead to inconsistent application of the statute. *See id.* at 952–53 (discussing possibility of two people, applying for SSI on same day, but being treated differently because of processing delays). The court held that under the plain language of section 602(a)(24), the husband became an SSI recipient as of April, the date of SSI eligibility, and thus should have been excluded from the family's income beginning in April for purposes of determining the wife's AFDC eligibility. *See id.* at 952.

DHS, on the other hand, asserts that the statutory exclusion only applies "if an individual is receiving" SSI benefits. DHS argues that section 602(a)(24) does not apply to retroactive SSI benefits, i.e., the eligibility determination period. Rather, the exclusion applies only prospectively to individuals once they actually receive their first SSI payment. Therefore, DHS argues, because appellant was not informed of her SSI eligibility until November 1992 and did not receive the SSI benefit check until December 1992, she was not an SSI "recipient" in October 1992 when she received the SSDI lump-sum payment.

In support of its argument, DHS relies on the dictionary definition of "receive," i.e., "to take possession and control," and the case *Pennsylvania v. United States,* 752 F.2d 795 (3d Cir.1984), which upheld the Secretary's announced policy that section 602(a)(24) does not apply to individuals who receive SSI benefits paid retroactively for the eligibility determination period. *See id.* at 799–800 (holding states could not be reimbursed for AFDC benefits paid during determination period).

Because the statute's plain language is susceptible to two equally plausible interpretations, we do not find the statutory language to be as "clear" as each party argues. Therefore, because the plain language of the statute is ambiguous as to whether Congress intended section 602(a)(24) to apply during the eligibility determination period, we look to the agency's interpretation of the statute for guidance.

### Deference to Agency Interpretation in Action Transmittal

The Secretary, in the AFDC Action Transmittal, interpreted the exclusion in section 602(a)(24) to apply only "on the date SSI payments are actually received." Under the Secretary's interpretation, an individual is not considered an SSI recipient during the determination period, although he or she receives an SSI lump-sum payment of benefits for that period. Appellant asserts that this court should not defer to the Secretary's interpretation for two reasons: (1) the Secretary's interpretation of section 602(a)(24) does not apply to the specific facts of this case, and (2) the policy stated in the AFDC Action Transmittal is merely interpretative, not substantive, and thus owed no deference.

First, appellant argues that the AFDC Action Transmittal's stated policy regarding the treatment of retroactive SSI payments was not based on, nor did it address, the facts of this case. Instead, the transmittal addresses federal policy regarding three distinct and separate situations.[6] Appellant claims that

6. The 1993 AFDC Action Transmittal was issued to specifically address inquiries received from the states on three issues related to the SSI determination period: (1) "whether or not States must recompute AFDC to adjust for any overpayments or underpayments created during the SSI retroactive period"; (2) how to treat "SSI retroactive payments to or on behalf of individuals

applying this policy to all situations is not fair, reasonable, or federal policy. Therefore, appellant argues that because the Secretary's interpretation neither applies to the facts of this case nor specifically addresses the disputed issue, the Secretary's interpretation of section 602(a)(24) is owed no deference.

We disagree. The AFDC Action Transmittal specifically addresses the exact issue before this court—the treatment of retroactive SSI payments collected during the determination period. In fact, the transmittal specifically applies to the facts of this case in that it states federal policy with respect to AFDC payments received by the SSI applicant during the eligibility determination period. The transmittal states:

> AFDC benefits for the SSI retroactive period will not be recomputed because they are correct payments. *Section [602(a)(24) ], which prohibits counting the income and resources of an SSI recipient for AFDC purposes, is applicable beginning on the date SSI payments are actually received.* Therefore, since ineligibility does not begin prior to the receipt of the SSI payment, AFDC payments issued during the SSI application processing period and prior to actual receipt of SSI are correct payments.

AFDC Action Transmittal, No. ACF–AT–93–20, at 2 (emphasis added). The policy statement not only applies to the facts of this case, it also clearly supports DHS's position. In addition, it clarifies the application of section 602(a)(24) in accordance with Congress's purpose in enacting section 602(a)(24)—to prevent an individual from receiving both AFDC and SSI benefits simultaneously, while still providing assistance to an SSI applicant during the determination period by requiring states to provide AFDC benefits.

■ Second, appellant asserts that because the Secretary's interpretation of section 602(a)(24) is stated in an action transmittal, it is merely an "interpretative rule," which is not binding on this court. DHS,

however, argues that this court is bound to give "substantial deference" to the Secretary's interpretation.

■ Where an agency's interpretation of a statute it is charged to administer is promulgated and published as a regulation in conformity with the requirements of the Administrative Procedure Act (APA), the interpretation is generally entitled to the force and effect of law. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (giving "legislative effect" to Secretary of Health's promulgated regulation interpreting term "available"). Basic principles of administrative law require courts to give such interpretations substantial deference. *See Gray Panthers,* 453 U.S. at 44, 101 S.Ct. at 2640; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (stating agency interpretation "entitled to a presumption of regularity"). As such, the agency's interpretation of a statute is generally given effect, unless it is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Id.* at 416, 91 S.Ct. at 823 (citation omitted).

■ However, agency policy, as stated in an action transmittal, is interpretative rather than substantive. *See Malloy v. Eichler,* 628 F.Supp. 582, 593 (D.Del.1986), *aff'd,* 860 F.2d 1179 (3d. Cir.1988); *New York State Dep't of Soc. Servs. v. Bowen,* 648 F.Supp. 850, 855 n. 9 (D.D.C.1986), *aff'd,* 835 F.2d 360 (D.C.Cir.1987). Unlike federal regulations, action transmittals do not go through the notice and comment procedure required by the APA. *See id.; see also* 5 U.S.C.A. § 553(b)(3)(A) (West 1996) (stating notice and comment procedures of APA do not apply to "interpretative rules"). As such, the Secretary's interpretation of a statute found in an action transmittal is not given the force and effect of law, nor is it binding on this court. *See Westmiller by Hubbard v. Sullivan,* 729 F.Supp. 260, 265 n. 7 (W.D.N.Y.1990). Therefore, in this case, the Secretary's interpretation of section

---

without continuing SSI eligibility"; and (3) "whether child support payments collected during the SSI retroactive period must be redistributed to the AFDC family." Treatment of Retro-

active SSI and Child Support Collected During the SSI Retroactive Period, AFDC Action Transmittal, No. ACF–AT–93–20, at 2 (Nov. 2, 1993).

602(a)(24) found in the AFDC Action Transmittal is neither given "legislative effect" nor is it binding on this court because the interpretation at issue does not involve a regulation promulgated upon an express delegation from Congress by formal rulemaking. *See Wisconsin, Dep't of Health & Soc. Servs. v. Bowen*, 797 F.2d 391, 397 (7th Cir.1986) (discussing appropriate deference given agency's action transmittal).

Although the Secretary's interpretation is not binding on this court, we do find the AFDC Action Transmittal persuasive in that it represents the Secretary's authoritative, administrative interpretation of the statute the Secretary has been delegated to implement. *See Gray Panthers*, 453 U.S. at 44, 101 S.Ct. at 2640 (describing complexity of Social Security Act as "unintelligible to the uninitiated," thus explaining Congress's explicit delegation of authority to Secretary to implement act). The AFDC Action Transmittal is helpful in interpreting section 602(a)(24), and we will adopt the Secretary's interpretation if it is reasonable and consistent with the overall design and purpose of the AFDC program and the statute's objectives. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417–18, 113 S.Ct. 2151, 2161, 124 L.Ed.2d 368 (1993) (stating court should be reluctant to disregard agency's current view if view is consistent with design and scheme of statute).

### Reasonableness of Secretary's Interpretation

■ Because this court determines that the Secretary's interpretation is helpful, we must determine whether it is reasonable and in compliance with the underlying purposes of the AFDC program and whether the Secretary's interpretation is based on a permissible construction of the statute, given the statutory scheme and underlying purpose of the AFDC program. *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782; *Malloy*, 628 F.Supp. at 593 ("[T]he Secretary's words are not entitled to legislative effect and [the Secretary's] interpretation must be subjected to

more intense scrutiny than that applied under the arbitrary and capricious standard.")

As stated earlier, the overall purpose of the AFDC program is to provide public assistance to needy children and to help these families gain financial independence and become self-sufficient. *See* 42 U.S.C.A. § 601. Due to limited resources, Congress enacted the lump-sum rule and section 602(a)(24) to better allocate the public assistance funds. The lump-sum rule promotes responsible budgeting of lump-sum income by AFDC families by requiring an AFDC family to use the lump-sum payment in place of its monthly AFDC grant until the lump sum is exhausted. The rule reduces the governmental cost of the AFDC program by allowing states to effectively distribute scarce resources and furthers the goal of the AFDC program to help families reach personal financial independence. In addition, because of the potential overlap between AFDC and SSI benefits, Congress enacted section 602(a)(24) to prevent an individual from simultaneously receiving full SSI and AFDC benefits while still providing AFDC for needy children despite the caretaker's receipt of SSI benefits.

In light of the overall purpose of the AFDC program and the statutory scheme, we hold that the Secretary's interpretation that section 602(a)(24) only applies when an individual actually receives SSI benefits is reasonable and supported by the legislative history. The Secretary's interpretation complies with the overall purpose of the statute, which is to provide assistance to needy children, by requiring that states continue to provide AFDC assistance to the SSI applicant during the eligibility determination period. The Secretary's interpretation clarifies and facilitates the administration of the program by establishing guidelines to determine when AFDC benefits end and SSI benefits begin. In addition, it furthers the underlying purpose behind the AFDC program by appropriately allocating scarce resources and by requiring that personal resources be used in place of public assistance.[7]

---

**7.** Moreover, the Secretary's interpretation of the words "receiving" and "received" to mean actual receipt by the beneficiary of the benefit check has been upheld as reasonable by other courts.

*See West v. Bowen*, 879 F.2d 1122, 1128 (3d Cir.1989) (holding interpretation reasonable as applied to food stamp benefits); *Pennsylvania v. United States*, 752 F.2d 795, 799–800 (3d Cir.

Appellant argues, however, that the Secretary's interpretation is unreasonable and unjust. Appellant asserts that the Secretary's interpretation, that an individual is not an SSI "recipient" until he or she actually receives the first benefit check, leads to disparate treatment of similarly situated individuals. Appellant urges that the Secretary's interpretation would lead to inconsistent results because two individuals could become eligible for SSI benefits on the same day, but become "recipients" on widely varying dates due to processing delays. Under certain circumstances, one individual could then lose AFDC benefits due to the receipt of a lump-sum payment before the SSI check, while the other would not.

Appellant urges this court to reject the Secretary's interpretation, citing cases stating that a statute's interpretation must produce a reasonable result, *see United States v. Meyer,* 808 F.2d 912, 919 (1st Cir.1987), that the Social Security Act must be construed liberally to achieve its remedial purpose, *see Doran v. Schweiker,* 681 F.2d 605, 607 (9th Cir.1982), and that the SSA "will not countenance depriving needy children of benefits because of factors beyond their control, and unrelated to their need." *Simpson v. Miller,* 535 F.Supp. 1041, 1050 (N.D.Ill.1982). We agree with these propositions. However, appellant has not proven that the Secretary's interpretation is unreasonable or contrary to these propositions. Instead, she argues that a different interpretation would be more reasonable. As such, we are reluctant to reject the agency's current interpretation of section 602(a)(24) where it closely fits the design of the statute as a whole and furthers the underlying purposes and policies of the AFDC program. *See Good Samaritan Hosp.,* 508 U.S. at 417–18, 113 S.Ct. at 2161.

Moreover, appellant's interpretation—that she be considered an SSI recipient during the eligibility determination period—would frustrate the purpose behind the AFDC program. Appellant's interpretation would require that DHS treat all SSI applicants as SSI recipients as of their SSI application date and, as such, deny SSI applicants AFDC assistance during the determination period. Such a rule would deny an individual both AFDC and SSI benefits during the determination period as a result of the necessary administrative delay in distributing the first lump-sum SSI benefit check. Such an interpretation could leave an already needy family with fewer available resources. It would make no sense to jeopardize a family's AFDC eligibility because of the SSI benefits to which an individual might be entitled but which he or she had not yet received and could not use. *Cf. Vanscoter,* 920 F.2d at 1448–49 (applying analysis to earned income credit and deferring to Secretary's interpretation). Such an interpretation does not further but rather contravenes the purpose of the AFDC program to provide for needy children. In addition, if DHS were required to treat all SSI applicants as if they were eligible for SSI benefits as of their application date, the administration of an already complex program would become even more complicated and require more resources when the State is required to reimburse an individual, found ineligible for SSI, for past AFDC benefits that were not paid during the determination period.

Therefore, because the policy announced in the AFDC Action Transmittal is consistent with the design and scheme of the AFDC program and serves to clarify how states should apply section 602(a)(24), the Secretary's interpretation of section 602(a)(24) is reasonable. We find the Secretary's interpretation of section 602(a)(24) persuasive in that it represents the Secretary's authoritative interpretation, albeit informal, of the Act Congress legislatively delegated to the Secretary to implement, and because the interpretation is reasonable in light of the purpose and objectives of the AFDC program. As such, we adopt the Secretary's interpretation and hold that the trial court did not err in deferring to it. However, the trial court was in error in concluding that it was compelled to give "substantial deference" to the AFDC Action Transmittal, which is neither binding

1984) (holding interpretation reasonable in denying state's claim for reimbursement of AFDC

benefits paid during determination period).

on nor owed "substantial deference" by either the trial court or this court.

## CONCLUSION

We hold that section 602(a)(24) does not apply during the determination period, but only once the individual actually receives the SSI benefit check. Therefore, an individual becomes an SSI recipient when SSI payments are actually received. Because appellant had not actually received any SSI benefits in October 1992 when she received the SSDI lump-sum payment, appellant was not an SSI recipient for purposes of determining the AFDC eligibility of her son. As a result, DHS properly included appellant's SSDI lump-sum payment as income available to the family and correctly found appellant's son ineligible for both AFDC and Medicaid benefits. Therefore, we affirm the trial court's order granting DHS's motion for summary judgment.

GREENWOOD, J., concurs.

BENCH, J., concurs in the result.